## Mayo v. McIntyre

C.P. of Lehigh County, No. 2010-C-1978.

*Mark Sigmon,* for plaintiff.
*Michael P. McIntyre,* pro se.

FORD, *J.,* January 18, 2012—Before the court for disposition are two motions for sanctions filed by defendant, Michael P. McIntyre, Esquire (McIntyre), who was sued in this legal malpractice case. In seeking sanctions, McIntyre asserts that counsel for plaintiffs, Mark S. Sigmon, Esquire (Sigmon), violated the terms of Pa.R.C.P. 1023. 1 and Pa.R.C.P. 1042.3. For the reasons that follow, McIntyre is correct. Sigmon's conduct in violating these rules makes the imposition of sanctions necessary and proper. Sigmon's conduct was obdurate by him and vexatious to McIntyre.

Plaintiffs, William R. Mayo (Mayo) and his two corporations, William R. Mayo, Inc., and Mayo Motors, Inc. (corporate plaintiffs), negotiated a sale of one of Mayo's car dealerships to another local car dealer. After the sale was completed, Mayo asserted that the settlement sheet did not accurately reflect the terms of the sale and that plaintiffs had been swindled out of $165,000. Thus, plaintiffs filed suits against the other car dealer and its corporate affiliates to recover the $165,000. McIntyre served as attorney for plaintiffs in those suits. On April 29, 2008, a jury returned a verdict in favor of plaintiffs

and against the other car dealer and its affiliates for only $1,440.

Plaintiffs contended that the jury's failure to award the full $165,000 resulted from legal malpractice on the part of McIntyre. Thus, plaintiffs began the case at hand by filing a praecipe for writ of summons against McIntyre on April 21, 2010. In response to McIntyre's request, the Clerk of Judicial Records issued a rule on plaintiffs on May 7, 2010, to file a complaint.

On June 4, 2010, Sigmon presented a motion in court for leave to obtain pre-complaint discovery. Sigmon indicated that he needed pre-complaint discovery to investigate whether a case for legal malpractice could be made against McIntyre for not representing plaintiffs properly in their attempt to recover the $165,000. Specifically, Sigmon stated that he needed to take the depositions of seven individuals "to ascertain if there [were] facts" sufficient to enable him to prepare and file a certificate of merit in support of a legal malpractice complaint against McIntyre. He added:

> And as I said, Judge, I can't in addition actually file the complaint because I don't want to file the complaint until I'm in a position to know as a lawyer doing a job for my client but also an officer of the court that it would have a meritorious claim of legal malpractice.

In the same proceeding on June 4, 2010, Sigmon presented a motion to extend the time for filing a complaint. In Paragraph 11 of that motion, Sigmon stated that the requested pre-complaint discovery "could result

in the actual discontinuance of the case at bar (the present legal malpractice action), with prejudice, all depending upon what the depositions of the seven (7) persons set forth above reveal." This same statement was made in Paragraph 14 of the motion for pre-complaint discovery.

On July 9, 2010, I entered an order denying Sigmon's request for pre-complaint discovery. In reaching this conclusion, I determined that plaintiffs lacked probable cause for a legal malpractice action against McIntyre. The full explanation for this ruling is contained in the explanatory footnote to the July 9 order. In the July 9 order, I additionally allowed plaintiffs 20 days to file a complaint. On this subject, I stated in the footnote to the order: "It is now the appropriate time to compel plaintiffs to file their complaint against defendant *if they have sufficient facts to legitimately state a cause of action against defendant.*" (Emphasis added).

On August 2, 2010, Sigmon filed a complaint alleging legal malpractice and breach of contract (based on a legal malpractice theory) against McIntyre. McIntyre responded by filing preliminary objections to the complaint on August 27, 2010. By order dated December 23, 2010, I sustained in part and overruled in part the preliminary objections. I ordered that plaintiffs' complaint be stricken because it lacked specific factual averments to support the malpractice claim. Also, Sigmon had no evidence of malpractice against McIntyre when Sigmon filed this complaint. It is admitted that Sigmon had the same knowledge about McIntyre's representation of Mayo when he filed this complaint as he did on the day he requested pre-complaint discovery in court. I afforded

plaintiffs the opportunity to get evidence and to file an amended complaint.

Sigmon filed an amended complaint on January 12, 2011. McIntyre responded by filing preliminary objections to the amended complaint on January 31, 2011. I conducted argument on the preliminary objections to the amended complaint on May 17, 2011. When Sigmon was making his argument in opposition to the second preliminary objections, the following exchange occurred:

The court: I have a question. Let me get my question out. I do remember. I'm not sure what proceeding, but you did stand right here (on June 4, 2010) and say that you don't know what this set of witnesses is going to say. You would like to take discovery to find out what they're going to say, and maybe once they say it, I (referring to Sigmon) wouldn't have a case. Maybe whatever they have to say does give me (Sigmon) a case. You really gave me the impression from things said here, apparently on the record if I'm not mistaken, that you really didn't have grounds for a legal malpractice case.

Now, if Mr. McIntyre is correct about judicial admissions, that's an interesting argument. I don't know the answer as I sit here. But assuming you're stuck with what you said previously, do you have new evidence here? Do you have evidence here that you didn't have before? Or are you trying to draw from things that you had; the same things that you had back then, you still have now and you tried to draw from those to draft these provisions in the complaint?

MR. SIGMON: Judge, I don't have any new evidence yet. I'll be blunt about it, Judge, and obviously there's a record taken. I attempted to have discussions so I could have something else. I've basically been told, until there's a deposition, I'm not going to be given any other information.

The court: Got it.

MR. SIGMON: And I won't tell the court anything different.

On July 15, 2011, I entered an order sustaining McIntyre's preliminary objections, striking plaintiffs' amended complaint and dismissing this case in its entirety. In the opinion accompanying the order of July 15, I explained that it was improper to permit plaintiffs to proceed with admittedly unfounded complaints contrary to the decisions of our appellate courts and rules of procedure. I further noted the unusual verification to the amended complaint signed by Sigmon. The verification read that the "Amended Complaint is legal in nature," and counsel alone is "best qualified to execute the foregoing Amended Complaint." I interpreted this to be a further acknowledgement that plaintiffs did not have the evidence needed to support their legal malpractice claim and the related breach of contract claim.

In essence, Sigmon sought pre-complaint discovery and then filed two successive complaints alleging malpractice against McIntyre when he had no evidence on any of those occasions to support a malpractice case.

In the first motion for sanctions which was filed on

May 17, 2011, McIntyre asserts that Sigmon violated Pa.R.C.P. 1023.1 in two ways. First, McIntyre contends that Sigmon prepared, signed and filed plaintiffs' complaint and amended complaint knowing that there existed no factual support for the generalized allegations of legal malpractice contained in those pleadings. Second, McIntyre asserts that Sigmon prepared, signed and filed the pleadings knowing that they included claims which were not recognized by any existing legal authority.

According to Pa.R.C.P. 1023.1,

(c) The signature of an attorney or pro se party constitutes a certificate that the signatory has read the pleading, motion, or other paper. By signing, filing, submitting, or later advocating such a document, the attorney or pro se party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,

...

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law,

(3) the factual allegations have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery;. . .

Furthermore, Pa.R.C.P. 1023.1(d) provides: "[i]f, after

notice and a reasonable opportunity to respond, the court determines that subdivision (c) [of Pa.R.C.P. 1023.1] has been violated, the court may . .. impose an appropriate sanction upon any attorneys, law firms and parties that have violated subdivision (c) or are responsible for the violation."

Sigmon and McIntyre disagreed over the legality of several of the claims contained in plaintiffs' complaint and amended complaint. These disagreements were analyzed by the court in both the preliminary objections to the complaint and the preliminary objections to the amended complaint. The legal issues raised in addressing the objections to these claims were complex and were open to reasonable differences of opinion. Thus, I conclude that Sigmon's arguments in support of the legality of the claims in the pleadings were non-frivolous. Thus, Sigmon did not violate Pa.R.C.P. 1023.1(c)(2).

On the other hand, Sigmon did violate Pa.R.C.P. 1023.1(c)(3) by submitting a complaint and an amended complaint without evidentiary support. In his written request for discovery and in court on June 4, 2010, Sigmon volunteered that he was unable to file a complaint without pre-complaint discovery because he did not have any facts supporting a claim for legal malpractice against McIntyre. Yet, after I denied the request for pre-complaint discovery, Sigmon filed a complaint and then an amended complaint alleging malpractice. At the May 17, 2011, argument on McIntyre's preliminary objections to the amended complaint, Sigmon admitted that he had obtained no additional evidence since his court appearance on June 4, 2010. Thus, Sigmon effectively acknowledged that he

prepared, signed, and filed a complaint and an amended complaint claiming legal malpractice when he was unaware if there was factual support for those claims. These actions by Sigmon violate Pa.R.C.P. 1023.1(c)(3) and justify the imposition of sanctions pursuant to Pa.R.C.P. 1023.1(d).

This case should have ended when the court denied pre-complaint discovery since Sigmon had not otherwise uncovered any evidence of malpractice against McIntyre. It did not end there. Instead, Sigmon prolonged the case by filing a complaint and then an amended complaint. These necessitated the continuation of a defense by McIntyre and caused the unjustified lingering of the malpractice lawsuit for months with consumption of a considerable amount of court time.

In McIntyre's second motion for sanctions, which was filed on September 19, 2011, he alleges that Sigmon violated Pa.R.C.P. 1042.3 by signing and filing a frivolous certificate of merit to support this malpractice action. McIntyre is correct in this contention.

In a professional negligence case, such as a legal malpractice action,

> the attorney for the plaintiff. .. shall file ... a certificate of merit signed by the attorney or party that [states that]. . .

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable

professional standards and that such conduct was a cause in bringing about the harm,....

Pa.R.C.P. 1042.3(a)(1).

Furthermore,

[a] court may impose appropriate sanctions . .. if the court determines that an attorney violated Rule 1042.3(a)(1). . . by improperly certifying that an appropriate licensed professional has supplied a written statement....

Pa.R.C.P. 1042.8(b).

On September 22, 2010, Sigmon filed a certificate of merit. In the certificate, Sigmon indicated that "[a]n appropriate licensed professional" supplied a statement that there was a basis to conclude that McIntyre had committed legal malpractice. However, the "appropriate licensed professional" who prepared the statement was Sigmon's law partner, William P. Exaros, Esquire (Exaros). The statement prepared by Exaros contained general allegations of malpractice nearly identical to the general averments contained in plaintiffs' complaint and amended complaint.

Neither Sigmon nor Exaros had knowledge of facts to support a malpractice claim against McIntyre. Therefore, it was wrong for Sigmon to request that Exaros prepare the statement alleging malpractice and it was wrong for Exaros to prepare the statement. Moreover, Sigmon and Exaros engaged in a self-serving conflict of interest. In *Parkway Corporation v. Edelstein*, 861 A.2d 264 (Pa. Super. 2004), the Superior Court commented that it would

be improper for plaintiff's counsel in a legal malpractice action to submit a certificate of merit based on a statement prepared by an attorney from plaintiff's counsel's firm. The court noted that the attorney preparing the statement would have "a vested interest in presenting the [malpractice] case as positively as possible," making the attorney's credibility "inherently suspect" and precluding him as an "appropriate licensed professional" for purposes of Pa.R.C.P. 1042.3. *Id.* at 267.

Because Sigmon willfully violated both Pa.R.C.P. 1023.1(c)(2) and Pa.R.C.P. 1042.3, I turn to the issue of the proper sanctions to impose. A list of potential sanctions is provided at Pa.R.C.P. 1023.4, including appropriate non-monetary sanctions, monetary penalty to the court and payment of a damaged party's legal fees and costs. Pa.R.C.P. 1023.4(a)(2). Furthermore,

> [t]he court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.

Explanatory comment to Pa.R.C.P. 1023.1.

With these considerations in mind, I have imposed sanctions on Sigmon which serve several purposes. They impress upon Sigmon that his insensitive and vexatious conduct have adverse consequences. McIntyre will be compensated for his extensive time and considerable trouble in having to defend what need not have been

defended. Finally, by compelling Sigmon to return fees collected for any work done by him after the case should have ended, Sigmon will realize no financial benefit from his misconduct.